## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BRADFORD METCALF,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Civil Action No. 07cv0206 (ESH)** |
| ) | |
| **FEDERAL BUREAU OF PRISONS,** ) | |
| **et al.** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## DEFENDANTS' MOTION TO DISMISS OR TO TRANSFER

The Defendants, by and through their attorney, the United States Attorney for the District

of Columbia, hereby moves to dismiss this case for lack of personal jurisdiction, subject matter

jurisdiction, improper venue and failure to state a claim pursuant to Fed. R. Civ. P 12(b)(1), (2),

(3) and (6). In the alternative, any claims not dismissed should be transferred to the Southern

District of Indiana where venue is proper. This motion is accompanied by a Memorandum and

Proposed Order consistent with LcvR 7(a) and (c).

October 29, 2007                Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

_____/s/_____

KENNETH ADEBONOJO
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Room E4210
Washington, D.C. 20530
(202) 514-7157

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **BRADFORD METCALF,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 07cv0206 (ESH)** |
| | ) | |
| **FEDERAL BUREAU OF PRISONS,** | ) | |
| **et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND TRANSFER

Defendants, Federal Bureau of Prisons ("BOP") and several BOP officials sued in their

official capacities, respectfully request dismissal of Plaintiff's case pursuant to Fed. R. Civ. P.

12(b)(1), (2), (3) and (6): lack of subject matter jurisdiction; improper venue; and failure to state

a claim, respectively.

### I. BACKGROUND

Plaintiff, Bradford Metcalf, pro se, Register Number 09198-040, is an inmate at the

United States Penitentiary Terre Haute, Indiana ("USPTH"). Compl. at 1, ¶3. Plaintiff was

sentenced to forty years for violations of federal firearms and conspiracy laws. Compl. at 2, ¶10.

On June 13, 2006, while incarcerated at USPTH, Plaintiff received a publication entitled

"Shotgun News" and prison mail room staff rejected it. Id. Plaintiff was informed that the

rejection was based on the security needs of the institution. Id. Specifically, the prison official

states that the rejection was based on "information inside the magazine that showed the complete

breakdown of weapons which if obtained could endanger the security of the institution." Id.

Plaintiff also alleges that, by denying him access to "Shotgun News", Defendants effectively

thwarted his attempt to attack his conviction and sentence collaterally. Plaintiff alleges that this is a violation of his First, Fifth and Six Amendment rights.

In addition, Plaintiff alleged that "the BOP...unlawfully extorted monies from [him] and his family in order to pay [his] fees." Compl. at 3, ¶4. Plaintiff claims he has signed payment contracts under duress and been told that if he did not sign these contracts he would be punished. Id. Plaintiff seeks "release from custody."[1] Compl. at 11, ¶¶4-6. Plaintiff further alleges that this constitutes a violation of his Fifth Amendment rights. Plaintiff seeks more than $10 million in damages and repayment of fees collected in the amount of $753.40. Id. Additionally, Plaintiff seeks an unspecified amount of punitive damages.

Regarding Plaintiff's "Shotgun News" claims, the USPTH staff acted in accordance with Program Statements 28 C.F.R. 540.70 and 28 C.F.R. 545.10 respectively. The latter permits the Warden to "reject a publication only if it is determined to be detrimental to the security, good order, or discipline of the institution or if it might facilitate criminal activity." The Warden may reject such publications as those that "depict or describe procedures for the construction or use of weapons...." This statement also permits the inmate to administratively challenge the Warden's decision. With respect to Plaintiff's fee-related claims, the Inmate Financial Responsibility Program ("IFRP"), 28 C.F.R. 545.10, "encourages each sentenced inmate to meet his or her legitimate financial obligations" requiring USPTH staff to help "inmates in developing a financial plan for meeting [their obligations]." These are the funds that cover inmates costs for telephone, mail, filing fees etc.

---

[1]    In a "Motion to Take Judicial Notice" filed on September 26, 2007, Plaintiff states that he subsequently filed a Motion to Hold Habeas Corpus Petition in Abeyance on March 13, 2007. The Docket Sheet does not reflect such a pleading.

Plaintiffs' complaint should be dismissed for several reasons. First, although Plaintiff seeks monetary damages, he does not state specifically from whom or that he is suing Defendants in their individual capacities. Therefore, he does not properly plead a <u>Bidens</u> action.[2] In addition, this court lacks personal jurisdiction over Defendants. Plaintiff has not properly served all Defendants including the ones that he named in a supplemental complaint filed August 24, 2007.[3] Moreover, this is not the proper venue for Plaintiff's habeas petition. Also, for reasons stated below, the facts fail to raise a cause of action because, to the extent that Plaintiff seeks relief from Defendants in their official capacities, sovereign immunity bars this action. Finally, Plaintiff failed to exhaust his administrative remedies.

## II.  STANDARD OF REVIEW

In resolving a motion to dismiss, pursuant to Rule 12(b)(6), the court must construe the factual allegations in the complaint in the light most favorable to plaintiff, but need not accept the legal conclusions or allegations without factual support in the allegations made. <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1965 (2007). The Court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record. <u>EEOC v. St. Francis Xavier Parochial Sch.</u>, 117 F.3d 621, 624 (D.C. Cir. 1997). Here, Plaintiff has pled no facts in support of this action that would entitle him to relief.

---

[2]    <u>Bivens v. Six Unknown Named Agents</u>, 403 U.S. 388 (1971).

[3]    Furthermore, dismissal is proper because, based on the facts alleged, Plaintiff fails to state a claim against any Defendants.

3

### III.  ARGUMENT

### A.    THIS COURT LACKS SUBJECT MATTER JURISDICTION

In this action, Plaintiff seeks monetary damages.  However, Plaintiff does not state with specificity from whom he seeks the monetary damages nor does he state with specificity that any Defendants are being sued in their individual capacities.  Therefore, this action cannot proceed under Bivens because such an action seeks monetary relief from a defendant in his or her individual capacity.  Correctional Serv. Corp. v. Malesko, 534 U.S. 61, 66 (2001).  Furthermore, Plaintiff also seeks relief in the form of release from incarceration.  Thus, because Plaintiff is challenging the validity of his incarceration, it would be improper to construe this as a Bivens action.  See Cherry v. Hawk, 1999 U.S. App. 3977 (D.C. Cir. 1999)(denying a Bivens claim where plaintiffs were also challenging their punishment thereby raising a habeas claim).

Based on the above, this court lacks subject matter jurisdiction because Plaintiff has failed to raise a proper Bivens claim and states no other bases for subject matter jurisdiction other than habeas.

### B.    This Court Has No Personal Jurisdiction – Fed. R. Civ. P. 12(b)(2)

To the extent he seeks judgment against Defendants in their individual capacities, Plaintiff has not established that this Court has personal jurisdiction over them.  Other than Director Lappin and Michael Atwood, Plaintiff has not shown and/or pled that any of the individual Defendants named in this lawsuit are residents of the District of Columbia.[4]  In fact,

---

[4]    Although both Director Lappin and Michael Atwood work in the District of Columbia, plaintiff makes no specific allegations against either and individual liability cannot be premised on a theory of respondeat superior.  Marshall v. Reno, 915 F.Supp. 426, 430 (D.D.C. 1996).

neither Director Lappin nor Michael Atwood reside in the District of Columbia. Therefore, there

is no in personam jurisdiction necessitating dismissal.

### 1. Plaintiff's Burden

It is the plaintiff who bears the burden of pleading the facts necessary to substantiate in

personam jurisdiction in this Court. Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 240 (2d Cir.

1999). As explained by this Court in Edmond v. U.S. Postal Service, 727 F. Supp. 7, 10

(D. D.C. 1989), aff'd in part and rev'd in part on other grounds, 949 F.2d 415 (D. C. Cir. 1991):

> A plaintiff in district court must plead essential jurisdictional facts
> and must carry throughout the litigation the burden of showing that
> he is properly in court. "If his allegations of jurisdictional facts are
> challenged by his adversary in any appropriate manner, he must
> support them by competent proof. And where they are not so
> challenged the court may still insist that the jurisdictional facts be
> established or the case be dismissed, and for that purpose the court
> may demand that the party alleging jurisdiction justify his
> allegations by a preponderance of evidence." McNutt v. General
> Motors Acceptance Corp., 298 U.S. 178, 189 (1936).

Plaintiff has failed and cannot meet his burden to establish such necessary facts. All individual

Defendants are moving for their dismissal from this lawsuit based upon lack of in personam

jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2).

### 2. D.C. Code §13-423, the "Long Arm" statute

Personal jurisdiction may be maintained by the United States District Court for the

District of Columbia if permitted by the "long arm" laws of the District of Columbia. Crane v.

Carr, 814 F. 2d 758, 762 (D.C. Cir. 1987). The District of Columbia exercises personal

jurisdiction based upon the D.C. Code's "long arm" statute at D.C. Code §13-423 (2000), which

states in relevant part:

5

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's–

(1) transacting any business in the District of Columbia;
(2) contracting to supply services in the District of Columbia;
(3) causing tortuous injury in the District of Columbia by an act or omission in the District of Columbia;
(4) causing tortuous injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;
(5) having an interest in, using, or possessing real property in the District of Columbia;
(6) contracting to insure or act as surety . . . ; or
(7) marital or parent and child relationship. . . .

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

In the instant case, plaintiff's pleading does not establish proper <u>in personam</u> jurisdiction

in the United States District Court for the District of Columbia under § 13-423. <u>Crane</u> at 762.

First, it is undisputed that Defendants Nalley, Bezy, Veach, Carlson, Baskerville and Erwin

cannot be found in the District of Columbia. <u>See also</u> <u>Docket Entry 8</u>. Moreover, Plaintiff has

failed to comply with the court's order, Docket 18, to properly serve Defendants Bezy and

Carlson.[5] Plaintiff does not allege, let alone demonstrate, that any Defendants are residents of the

District of Columbia. Moreover, the Plaintiff does not allege that any of the above-referenced

Defendants transacted any business or contracted to supply services in the District of Columbia,

nor have they caused any tortious injury in the District of Columbia. Moreover, <u>in personam</u>

_____

[5]    In his Motion for Judicial Notice filed yesterday, Plaintiff alleges that he has not been able to serve these two Defendants because the Bureau of Prisons has refused to furnish their home address.

6

jurisdiction cannot be predicated on the provisions of the sections (a)(3) and (4) of the "long arm" statute because the plaintiff does not and cannot claim that the federal employees at the USPTH where he was housed outside the District caused him tortious injury within the District of Columbia. The injuries about which plaintiff complains occurred at the USPTH and he alleges no facts to establish that he suffered any injury in the District of Columbia. See Farmer v. Moritsugu, 163 F.3d 610 (D.C. Cir. 1998) (local medical staff treating in BOP institutions outside D.C. not subject to personal jurisdiction); Meyer v. Federal Bureau of Prisons, 940 F. Supp. 9 (D. D.C. 1996) (No personal jurisdiction over Bureau of Prisons case manager working in Rochester, Minnesota, sued in D.C. in individual capacity by inmate based upon claimed inaccuracy of prison records). There is no act or injury alleged to have been accomplished within the District of Columbia by any of these Defendants. Any injury to Plaintiff necessarily took place outside the District of Columbia, since he was never housed in the District of Columbia and all allegations in this action pertain to his incarceration in USPTH. Therefore, this Court lacks personal jurisdiction over the above named Defendants for activities taking place outside the District of Columbia.

### 3. In personam jurisdiction requires "minimum contacts"

In order for the District Court for the District of Columbia to have personal jurisdiction over a non-resident defendant, jurisdiction must be proper under both the District of Columbia long-arm statute and consistent with the demands of due process. United States v. Ferrara, 54 F.3d 825, 828 (D.C. Cir. 1995); Crane v. Carr, 814 F.2d 758, 762 (D.C. Cir. 1987). "Since the District of Columbia's long-arm statute has been held to extend as far as the Due Process Clause allows, Mouzavires v. Baxter, 434 A.2d 988 (D.C. 1981) (en banc), cert. denied, 455 U.S. 1006

(1982), personal jurisdiction exists when the defendant has purposely established minimum contacts with the forum state and when the exercise of jurisdiction comports with 'traditional notions of fair play and substantial justice.' Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102 (1987)." Wiggins v. Equifax Inc., 853 F. Supp. 500 (D. D.C. 1994). "Plaintiff's claim for relief must arise from the defendants' contacts with the District of Columbia and his 'claims must bear some relation to the acts in the District that are relied upon to confer personal jurisdiction.' [D.C. Code] § 13-423(b). Bayles v. K-Mart Corp., 636 F. Supp. 852, 854 (D.D.C. 1986)." Id. at 502.

　　　The burden is again on the plaintiff to establish that this Court can exercise personal jurisdiction over defendants consistent with the Due Process Clause. Blumenthal v. Drudge, 992 F. Supp. 44, 53 (D. D.C. 1998). Plaintiff in this case has wholly failed to allege such facts, and the allegations against all the individual Defendants do not establish "minimum contacts" necessary to confer personal jurisdiction upon the District Court for the District of Columbia. The mere fact that Defendants are employees of the BOP and the Central Office of that agency happens to be in Washington, D.C., is insufficient to establish the requisite "minimum contacts" with the District of Columbia. Cameron v. Thornburgh, 983 F.2d 235, 256 (D.C. Cir. 1993); see James v. Reno, et al., No. 99-5081, 1999 WL 615084 (D.C. Cir. Jul. 2, 1999) (Inmate's security classification and transfer request made in Texas; both federal prisons at issue located in Texas; no injury suffered in the District of Columbia; mere fact that defendants are employees of the Bureau of Prisons is insufficient to establish requisite "minimum contacts" with District); Meyer v. Reno, 911 F. Supp. 11, 14 (D.D.C. 1996) (Bureau of Prisons employee who works at FCI Memphis, Tennessee and three Florida State attorneys not alleged to conduct any business or

8

make any contracts for services and no injury alleged to have been suffered in the District of Columbia, so court cannot exercise jurisdiction over them).

The presence in the District of Columbia of the Defendants must be "continuous and systematic" and relative to the claim to meet the "minimum contacts" requirement. International Shoe Co. v. Washington, 326 U.S. 310 (1945). In this case, the individual Defendants lack the requisite minimum contacts with the District of Columbia because the operative facts of any claim herein arose in USPTH. Therefore, individual Defendants' motions to dismiss under Rule 12(b)(2) should be granted, and they should be dismissed from this suit.[6]

### C.   Venue Is Improper – Fed. R. Civ. P. 12(b)(3).

Among the relief he seeks, Plaintiff "also requests release from custody of the Bureau of Prisons." Compl. at 11. In other words, Plaintiff seeks habeas corpus relief, which is the exclusive remedy for a prisoner who sues the government with the goal of securing release. Chatman-Bey v. Thornburgh, 864 F.2d 804, 809 (D.C. Cir. 1988). In Guerra v. Meese, 786 F.2d 414, 415 (D.C. Cir. 1986), the court held that a District Court "may not entertain a habeas corpus action unless it has personal jurisdiction over the custodian or the prisoner." See also Chatman-Bey, 786 F.2d at 810 (reaffirming that the "appropriate defendant in a habeas action is the custodian or the prisoner."); Blair-Bey v. Quick, 151 F.3d 1036, 1039 (D.C. Cir. 1998)(same). Because Plaintiff seeks release from custody as part of his request for relief, his challenge is to the fact or duration of his confinement and, thus, is properly pursued as habeas. A habeas action

---

[6]     Although both Director Lappin and Michael Atwood work in the District of Columbia, plaintiff makes no specific allegations against either and individual liability cannot be premised on a theory of respondeat superior. Marshall v. Reno, 915 F.Supp. 426, 430 (D.D.C. 1996).

is not proper in this district, however, because this court does not have jurisdiction over Plaintiff's custodian in Indiana.

To the extent that Plaintiff alleges <u>Bivens</u> claims against the individual Defendants, they must also be dismissed pursuant to Fed. R. Civ. P. 12(b)(3) for improper venue. Venue in <u>Bivens</u> cases is governed by 28 U.S.C. § 1391(b). <u>See Stafford v. Briggs</u>, 444 U.S. 527, 544 (1980); <u>Cameron v. Thornburgh</u>, 983 F.2d 253, 257 (D.C. Cir. 1993); <u>Pollack v. Meese</u>, 737 F. Supp. 663, 665 (D.D.C. 1990). Under § 1391(b), a <u>Bivens</u> cause of action may be brought only in a judicial district where: (1) any defendant resides if all defendants reside in the same state; (2) a substantial part of the events or omissions giving rise to the claim occurred; or (3) any defendant may be found if there is no district in which the action may otherwise be brought. <u>See</u> 28 U.S.C. § 1391(b).

Historically, the D.C. federal courts do not permit inmates incarcerated in other jurisdictions to challenge conditions of confinement in this district simply because it is the location of the Bureau's Central Office. The BOP has over 170,000 inmates in over 100 institutions nationwide. <u>See</u> www.bop.gov ("public information, quick facts and statistics"). Courts recognize the danger of giving all federal inmates the opportunity to bring their claims in this district: "Courts in this circuit must examine the challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia." <u>Cameron v. Thornburgh</u>, 983 F.2d 253, 256 (D.C. Cir. 1993).

In the instant case, venue is not proper in this District under 28 U.S.C. § 1391(b). Plaintiff has provided no evidence that the individual Defendants reside in the same state and no significant events giving rise to the claim occurred within the District of Columbia; therefore,

10

venue is improper in the District of Columbia pursuant to 28 U.S.C. § 1391(b) and Meyer v.
Reno, et al., 911 F. Supp. 11, 15 (D.D.C. 1996). Because venue is improper, the Court should
dismiss any Bivens claims under Fed. R. Civ. P. 12(b)(3).

### D.    Plaintiff Has Not Perfected Service Against Individual Defendants

Plaintiff has failed to serve Defendants Bezy and Carlson with a summons and complaint
as required by Fed. R. Civ. P. 4(e).[7] Docket Entries 8, 11, 12, 14. Pursuant to Fed. R. Civ. P.
4(m), if "service of the summons and complaint is not made upon a defendant within 120 days
after the filing of the complaint, the court, upon motion or on its own initiative after notice to the
plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be
effected within a specified period of time..." In the instant case, the court has already notified
Plaintiff of the consequences of lack of service against Bezy and Carlson. See Docket Entry 18.
Plaintiff's failure to comply with this rule merits dismissal of these Defendants.

Service upon the remaining Defendants did not comply with the requirements for service
upon federal officials in their individual capacities. Defendants Baskerville, Erwin and Veach
were served via certified mail and Atwood received the complaint from BOP legal staff.[8] Docket
Entry 12. It is well established that, in an action against a federal employee in his or her
individual capacity, the individually-sued defendant must be served with process in accordance

---

[7]    Although Plaintiff only recently attempted to supplement his complaint, he has
not served the Defendants he alleges damaged him. Also, dismissal is proper because Plaintiff
cannot state a constitutional violation on the facts pled.

[8]    Although Nalley signed a waiver of service, Plaintiff has not pled a proper Bivens
claim against Defendant Nalley because Nalley does not work at USPTH, docket entry 12, and
therefore was not engaged in any personal contacts with Plaintiff. Marshall v. Reno, 915 F.Supp.
426, 430 (D.D.C. 1996).

11

with Rule 4(e) of the Federal Rules of Civil Procedure. Id. ;see Fed. R. Civ. P. 4(i)(2)(B) . Rule 4(e) provides that service is effectuated either by complying with the laws of the state in which the district court is located or by delivering a copy of the summons and complaint to the defendant (or his appointed agent) personally, or by leaving copies thereof at the defendant dwelling house or usual place of abode with some person of suitable age and discretion who resides there. Fed. R. Civ. P. 4(e). The SCR-Civil 4(e)(2) likewise allows for service upon individuals by personal service or by leaving a copy at the individual's abode with a suitable person. Actual notice will not, of course, substitute for technically proper service under Rule 4 and will not permit the Court to render a personal judgment against an individually-sued defendant. Sieg v. Karnes, 693 F.2d 803 (8th Cir. 1982); See also Stafford v. Briggs, 444 U.S. 527 (1980).

In this case, the method of service supports Defendants' argument that a Bivens claim cannot lie because Defendants were not served individually as required when officials are sued in their individual capacities. This further supports dismissal of Plaintiff's claims because, as Defendants are sued only in their official capacities, sovereign immunity defeats Plaintiff's complaint.

The District Court will lack jurisdiction over the federal officials, until all of the provisions of Rule 4(i)(1) and (2) are met. Ecclesiastical Order of the Ism of Am, Inc. v. Chasin, 845 F.2d 113, 116 (6th Cir. 1988); Sanchez-Mariani v. Ellingwood, 691 F.2d 592, 594 (1st Cir. 1982). It is Plaintiff's burden to establish the validity of service of process. Grand Enter. Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 488 (3d Cir. 1993); Lensel Lopez v. Cordero, 659 F. Supp. 889, 890 (P.R. 1987). Therefore, if that cannot be demonstrated, this case should be

dismissed based upon insufficiency of service of process under Rule 12(b)(5). Accordingly, claims against the individual Defendants should be dismissed.

### E.    PLAINTIFF FAILS TO STATE A CLAIM UNDER RULE 12(b)(6)

       a.    Plaintiff's Complaint is Barred by Sovereign Immunity

To the extent that Plaintiff seeks damages for alleged constitutional violations against the individual Defendants in their official capacities or the BOP, these claims must be dismissed absent a waiver of sovereign immunity. Meyer v. Reno, 911 F. Supp. 11 (D.D.C. 1996); Marshall v. Reno, 915 F. Supp. 426 (D.D.C. 1996); Deutsch v. U.S. Dept. of Justice, 881 F. Supp. 49, 55 (D.D.C. 1995). The inherent sovereign immunity of the United States protects it and its agencies from suit absent express waiver. See United States v. Nordic Village, 503 U.S. 30 (1992). Sovereign immunity also bars suits for money damages against officials in their official capacities for nondiscretionary acts absent a specific waiver by the government. Clark v. Library of Congress, 750 F.2d 89, 101-02 (D.C. Cir. 1984). The United States has not waived its sovereign immunity for claims for money damages based on alleged constitutional violations. Wishard v. DOJ, 2000 U.S. App. Lexis 17995, *3 (D.C. Cir. 2000). Plaintiff's complaint does not contain any colorable basis for such a waiver. Therefore, to the extent Plaintiff asserts claims for damages against either the individual Defendants in their official capacities or the BOP as an agency based on alleged violations of constitutional law, such claims must be dismissed for lack of subject matter jurisdiction.

       b.    Plaintiff fails to Allege Facts Raising a Claim

          1. The "Shotgun News" Claims

Prison officials' rejection of Plaintiff's magazine does not violate his constitutional

13

rights. The reasonableness of regulation of publications to and from prisons is analyzed under

the doctrine announced in Turner v. Safly, 482 U.S. 78 (1987). The reasonableness test is met

when the prison regulation is related to a government objective, the regulation is legitimate and

neutral and is rationally related to that objective and there is no less intrusive means. Thornburgh

v. Abbot, 490 U.S. 401, 411-412. In Thornburgh, in response to the argument that prison

officials could simply tear out the offending portions of the publication, the Court upheld

Defendant BOP's "all or nothing" rule. The all or nothing rule enables the Warden the discretion

to accept a publication in its totality or reject totally. In making its decision, the Court said

> Regarding the all or nothing rule, we analyze respondents'
> proposed alternatives to that rule as alternative means of
> accommodating respondents' asserted rights. The District Court
> discussed the evidence and found, on the basis of testimony in the
> record, that petitioners' fear that tearing out the rejected portions
> and admitting the rest of the publication would create more
> discontent than the current practice was 'reasonably founded.'
> App. to Pet. for Cert. 34a. The Court of Appeals did not contest
> the District Court's factual finding as such, but ruled that
> upholding a practice merely because it is based upon 'reasonably
> founded' fears is improper under Martinez: the Court of Appeals
> held this finding 'conflicts with the holding of Martinez that prison
> administrators have the burden of showing that a restrictive
> practice is 'generally necessary.' 824 F.2d at 1174.
>
> As we here do not apply the Martinez standard, we reject the Court
> of Appeals' sole ground for questioning the District Court's
> finding in this respect. In our view, when prison official are able to
> demonstrate that they have rejected a less restrictive alternative
> because of reasonably founded fears that it would lead to greater
> harm, they succeed in demonstrating that the alterative they have
> selected was not an 'exaggerated response' under Turner.
> Furthermore, the administrative inconvenience or this proposed
> alternative is also a facto to be considered and adds additional
> support to the District Court's conclusion that petitioners were not
> obligated to adopt it. Wolfish, 441 U.S. at 549.

490 U.S. at 419

An equally compelling justification for Defendants' denial of Plaintiff's access to publications about guns is the safety and security of the prison. Here, allowing Plaintiff to receive "Shotgun News" puts a publication about assembling guns in the hands of a former licensed gun dealer incarcerated in a maximum security correctional institution. The Warden is certainly within his discretion to prevent such a scenario from occurring. Defendants' actions bear a reasonable relationship to a legitimate penological interest. Overton v. Bazzetta, 539 U.S. 126, 133 (2003)(upholding regulations placing restrictions on children's visitation on safety and security grounds). Once the Warden has properly determined that Plaintiff cannot possess a portion of "Shotgun News," the all or nothing rule allows him to prohibit the Plaintiff from possessing any part of it. Thus, the BOP's "all or nothing" rule and content regulations are based on legitimate penological interests. Accordingly, Plaintiff fails to state a claim for which relief can be granted.

2.    Plaintiff's Fee-Related Claims

Plaintiff alleges insufficiently that the BOP and USPTH's IFRP amounts to a taking of his property without due process. As explained above, the Inmate Financial Responsibility Program, governed by 28 C.F.R. 545.10, is a program that enables inmates to be responsible for their own finances. It is from these funds that inmates are able to pay for their telephone, mail and court filing fees. Plaintiff contends that P.S. 5380 violates the Fifth Amendment due process clause because he has been deprived of his funds without due process.

Plaintiff's due process claim fails. First, the IFRP does not violate the due process clause because it is voluntary but with consequences for non-participation. Williams v. Pearson, 2006

15

U.S. App. Lexis 24282, *10. As an incentive to inmates to participate in the IFRP, the BOP and USPTH attach benefits to participation in the program. Conversely, there are adverse consequences for non-participation. Clearly, the BOP is within its discretion to ensure maximum participation amongst inmates. Plaintiff is not compelled to participate, therefore there is no due process violation. Indeed, every circuit that has heard challenges to the IFRP has upheld same as reasonably related to the legitimate goal of rehabilitation. Id.

More recently, in Sickles v. Campbell County, 2007 U.S. App. LEXIS 21163, the Sixth Circuit held that IFRPs do not violate the due process clause because the inmates' claims were relatively small, the risk of erroneous deprivation was minor and that the government's interest in sharing costs and fostering inmate accountability were substantiated. Id. at 7-10. Here, Plaintiff has not raised a constitutional claim because the IFRP has been upheld and $75 deducted from Plaintiff monthly is relatively small in relationship to the entire amount deducted from inmates and the risk of error and consequences of such error are relatively minor.

## F.    Defendants Are Entitled To Immunity from Suit[9]

Plaintiff's claims should also be dismissed because the individual Defendants are entitled to qualified immunity. The plaintiff is seeking monetary damages against the individual Defendant government officials. Qualified immunity shields government officials from suit in performance of a discretionary function unless that official's conduct violated a clearly

---

[9] Although not properly served, and hence, not proper parties in their individual capacities, the individually named Defendants would also be protected from personal liability by qualified immunity. Although the complaint is far from clear, to the extent that Plaintiff is attempting to sue any of the Defendants based on their rulings on his efforts to exhaust his administrative remedies, they would be immune from suit. E.g., Butz v. Economou, 438 U.S. 478, 515-16 (1978).

16

established constitutional or statutory right of which a reasonable person would have known.

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is "an entitlement not to

stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

The privilege is "an immunity from suit rather than a mere defense to liability; and like an

absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Id. The

D.C. Circuit, in Farmer v. Moritsugu, 163 F.3d 610, 613 (D.C. Cir. 1998), explained:

> In short, "[a]n official is ... entitled to summary judgment [on qualified immunity
> grounds] unless '[t]he contours of the right [were] sufficiently clear that a
> reasonable official would [have] underst[ood] that what he [was] doing violate [d]
> that right.' " Harris v. District of Columbia, 932 F.2d 10, 13 (D.C. Cir. 1991)
> (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987), aff'd 922 F.2d 443
> (8th Cir. 1990)).

By "provid[ing] government officials with the ability reasonably to anticipate when their conduct

may give rise to liability for damages," Anderson, 483 U.S. at 646, the doctrine of qualified

immunity strikes a balance between compensating those injured by official conduct and

protecting the Government's basic ability to function. See Harlow, 457 U.S. at 813-14. In other

words, qualified immunity is designed to mitigate the social costs of exposing government

officials to personal liability--costs such as "distraction of officials from their governmental

duties, inhibition of discretionary action, and deterrence of able people from public service." Id.

at 816; see also Harris, 932 F.2d at 13. To this end, qualified immunity provides not simply a

defense to liability, but also "an entitlement not to stand trial or face the other burdens of

litigation, conditioned on the resolution of the essentially legal question whether the conduct of

which the plaintiff complains violated clearly established law." Mitchell v. Forsyth, 472 U.S.

511, 526 (1985).

17

In determining whether a correctional official is entitled to qualified immunity from personal liability for money damages, there is a two-step process that must be followed by a federal court. Saucier v. Katz, 121 S. Ct. 2151 (2001). A court must always begin with this first step: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 2156. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Id. Therefore, if the first portion of the two-pronged test is not met, that is, there is no constitutional violation, then the defendants are entitled to qualified immunity. See Farmer v. Moritsugu, 163 F.3d 610, 613 (D.C. Cir. 1998) (no Eighth Amendment showing of deliberate indifference by BOP Medical Director; therefore, he was entitled to qualified immunity); Verdecia v. Adams, 327 F.3d 1171, 1177 (10th Cir. 2003) ("Because Verdecia cannot meet the first portion of the two-pronged test, the defendants are entitled to qualified immunity.").

In this case, the Plaintiff fails to demonstrate that the individually named defendants violated any of his constitutional rights. As discussed above, Plaintiff's claim appears to be based upon the allegation that a denial of his first amendment rights arises from the denial of his access to literature about firearms while incarcerated. This position is clearly unsupported by the law. As stated above, Plaintiff, a self-described firearms dealer was denied access to firearms literature for perfectly legitimate penological reasons. In addition, fees deducted from Plaintiff's earnings do not violate any clearly established constitutional right, as demonstrated in the recent

18

<u>Sickles</u> decision discussed above. Thus, Plaintiff's allegations do not from a <u>Bivens</u> claim upon which relief may be granted. See <u>Martin v. Malhoyt</u>, 830 F.2d 237, 254 (D.C.Cir. 1987).

Assuming arguendo the complaint could be interpreted to sufficiently allege that each named defendant committed unconstitutional acts, plaintiff failed to articulate how these constitutional rights were clearly established. <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987). To the contrary, as cited above, the existing body of case law supports the BOP's actions. Accordingly, even under the facts as alleged in the complaint, each of the named defendants is entitled to qualified immunity, and should be dismissed from this lawsuit.

### G.  Plaintiff Failed to Exhaust Administrative Remedies

With regard to his claims pertaining to his denial of access to publications, Plaintiff fails to state a claim because he did not exhaust his administrative remedies. The denial of an inmate's access to publications is in the Warden's sole discretion. 28 C.F.R. 540.70. Here, in addition to denying him access to "Shotgun News," Plaintiff was notified that he had a right to appeal the Warden's decision within twenty days of the decision. There is no evidence in the record that Plaintiff attempted to pursue this remedy. Accordingly, Plaintiff failed to exhaust his administrative remedies and the consequence is dismissal.

### H.  Any Claims not Dismissed Should be Transferred to the District of Indiana

Alternatively, to the extent that any portion of this case might withstand the dismissal arguments already made, it is inappropriately brought in the United States District Court for the District of Columbia. If at all, this action properly belongs in the Southern District of Indiana. 28 U.S.C. § 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of
> justice, a district court may transfer any civil action to any other
> district or division where it may have been brought.

The United States Court of Appeals for the District of Columbia has held that cases such

as this one should not be heard in the District of Columbia, but should instead be transferred to

the judicial district where the prisoner is incarcerated, pursuant to § 1404(a). ". . . [M]any, if

indeed not most, petitions filed by prisoners not confined in the District of Columbia and not

sentenced here originally, will tend to involve factors that make transfer to the place of

incarceration appropriate." Starnes v. McGuire, 512 F.2d 918, 926 (D.C. Cir. 1974) (en banc).

The Court of Appeals recognized that even if venue is technically appropriate, "there is certainly

no reason why all cases involving the construction or constitutionality of a federal statute should

be litigated in the District of Columbia." Id. at 925. Rather, where the records, witnesses, and

counsel for the case are located near the prison and there is no issue of national importance raised

by the complaint, "transfer of the complaint to the district of the plaintiff's incarceration is

indicated." Id. at 933; see also Lincoln v. Bureau of Prisons, Civ. No. 96-2325, at 2 (D.D.C. May

2, 1997) ("[t]his Circuit discourages 'carpetbagging' by prisoners who incarcerated elsewhere.")

The D.C. Circuit in Starnes set out a number of factors for a district court to use in

deciding whether to transfer a civil case brought by a prisoner incarcerated outside the District of

Columbia. Those factors are: (1) the prisoner's difficulty of communication with counsel; (2) the

difficulty of transferring the prisoner; (3) the availability of witnesses and files; (4) the speed of

final resolution; and (5) whether the case involves issues of national policy that require the

testimony of high-level administrators located in Washington, D.C. Starnes, 512 F.2d at 929-33.

20

The Starnes factors mandate that this matter be transferred if not dismissed in its entirety. With regard to the first consideration, Plaintiff is presently pro se, thus communication with counsel is not an issue. Secondly, transferring Plaintiff here will be an unnecessary logistical and administrative inconvenience especially where, as here, transfer of the matter is a less burdensome alternative. Third, it is undisputed that the files and witnesses most pertinent to this matter are in Indiana. Fourth, a speedier resolution is more likely in Indiana because all of the relevant players and supporting documents reside in that District. Finally, there are no significant issues presented that would necessitate high-level BOP involvement.

## CONCLUSION

For the foregoing reasons, this matter should be dismissed or, alternatively transferred.

October 29, 2007                         Respectfully submitted,


                                         _____/s/_____
                                         JEFFREY A. TAYLOR, D.C. BAR # 498610
                                         United States Attorney


                                         _____/s/_____
                                         RUDOLPH CONTRERAS, D.C. BAR # 434122
                                         Assistant United States Attorney



                                         _____/s/_____
                                         KENNETH ADEBONOJO
                                         Assistant United States Attorney
                                         Judiciary Center Building
                                         555 Fourth Street, N.W.
                                         Room E4210
                                         Washington, D.C. 20530
                                         (202) 514-7157

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **BRADFORD METCALF,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Civil Action No. 07cv0206 (ESH)** |
| | ) |
| **FEDERAL BUREAU OF PRISONS,** | ) |
| **et al.** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**ORDER**

UPON CONSIDERATION of the Defendants' Motion To Dismiss Plaintiff's Complaint,

support thereof, the grounds stated therefore and the entire record in this matter, it is by the Court

this _____ day of _____, 2007, hereby

ORDERED that the said motion be and hereby is granted, and

FURTHER ORDERED that this case is dismissed with prejudice.

This is a final and appealable order.

_____
HON. ELLEN S. HUVELLE, U.S.D.J.

Copies to:

Kenneth Adebonojo
Assistant United States Attorney
555 4th Street, N.W
Washington, D.C. 20530

Bradford Metcalf,
Fed. Reg. No. 09198-040
P.O. Box 33
Terre Haute, Indiana
4780817837

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Defendants' Motion to Dismiss Plaintiff's Complaint

was mailed by depositing a copy of it in the U.S. Mail, first class postage prepaid, addressed to:

Bradford Metcalf,
Fed. Reg. No. 09198-040
P.O. Box 33
Terre Haute, Indiana
4780817837

on this 29th day of October, 2007

/s/
KENNETH ADEBONOJO

25